**KELLY / WARNER, PLLC**
404 S. Mill Ave, Suite C-201
Tempe, Arizona 85281
Daniel R. Warner, Esq. (AZ Bar # 26503)
Email: dan@kellywarnerlaw.com
Tel: 480-331-9397
Fax: 1-866-961-4984
Attorneys for Defendant Doe

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CURIS RESOURCES LIMITED,<br><br>　　　　Plaintiff,<br><br>　v.<br><br><br>JOHN/JANE DOE,<br><br>　　　　Defendant. | No: 2:12-mc-00079-DGC<br><br>**DEFENDANT DOE'S MOTION TO QUASH SUBPOENA PURSUANT TO FED. R. CIV. P. 45(C)(3) AND ALTERNATIVE MOTION FOR PROTECTIVE ORDER**<br>**-AND- MOTION FOR SANCTIONS** |

　　　　Defendant ("Doe"), by and through undersigned counsel, moves the Court to quash, pursuant to Rule 45(c)(3)(A), Fed. R. Civ. P., any and all subpoenas seeking Doe's identity, including the subpoena served upon Pinal County. In the alternative Defendant seeks a Motion for Protective Order from this Court, pursuant to Rule 26(c), prohibiting any party from publicly disclosing any information relating to Defendant that Plaintiff obtains via the subpoena, including requiring any pleadings filed in this action that contain Defendant's confidential information to be redacted and filed under seal to prevent public disclosure.

　　　　Doe's Motions are supported by the following Memorandum of Points and Authorities and all pleadings on file with the Court, which are all hereby incorporated by reference.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.　FACTS.**

Plaintiff filed a defamation lawsuit in Canada against Doe for engaging in discussion and public debate on an investor blog on stockhouse.com. *See* Complaint attached to Exhibit "A" hereto. After Plaintiff filed a letter of rogatory in this Court, the undersigned filed a Notice of Appearance and Request for Notice prior to any subpoena being issued and specifically informed Plaintiff's counsel that the undersigned would be "objecting to any subpoenas and/or other discovery seeking to reveal Defendant's identity," and that "undersigned requests that all filings, subpoenas, discovery requests, and notices also be sent to the address set forth below . . . ." However, Plaintiff's counsel knowingly failed to provide the undersigned with an opportunity to object and had subpoenas served on Pinal County and Qwest. The undersigned only found out that these subpoenas were issued because he inquired. Plaintiff should be sanctioned for engaging in this conduct.

To the extent Pinal County and Qwest have not disclosed any information regarding Doe's identity, Doe respectfully requests that the subpoenas be quashed. Additionally, to the extent any information has been disclosed, Doe respectfully requests that the Court preclude use of any such information as a partial sanction. Plaintiff's egregious and unethical attempt to circumvent the law and trample on Doe's First Amendment rights cannot be excused.

## II.   Legal Standards

### A.   Standing

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. *See Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005).

### B.   Authority to Quash Subpoena or Grant Protective Order

Under Rule 45(c)(3), a court must modify or quash a subpoena that, *inter alia,*

"requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A). A court may modify or quash a subpoena that, *inter alia,* requires disclosing confidential information. Fed.R.Civ.P. 45(c)(3)(B). Furthermore, Rule 26(c)(1)(A) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1). The court also must:

> …limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C)(iii).  Finally, the rules pertaining to protective orders allow the court to impose a broad array of protections as an alternative to forbidding the discovery or discovery. See, Rule 26(c)(1)(B)-(H). These include forbidding the inquiry into certain matters or limiting the scope of disclosure or discovery; prescribing a discovery method other than the one selected by the party seeking to obtain discovery; and requiring that a deposition or other discovery record be sealed and opened only as the Court directs.  Fed.R.Civ.P. 26(c)(1)(C),(D),(F) and (H).

**III.    Argument to Quash**

A United States Court may not enforce a foreign order that violates the protections of the United States Constitution by chilling protected speech that occurs simultaneously within our borders. *See, e.g., Matusevitch v. Telnikoff,* 877 F.Supp. 1, 4 (D.D.C.1995) (declining to enforce British libel judgment because British libel standards "deprive the plaintiff of his constitutional rights"); *Bachchan v. India Abroad Publications, Inc.,* 154 Misc.2d 228, 585 N.Y.S.2d 661 (Sup.Ct.1992) (declining to enforce a British libel judgment because of its "chilling effect" on the First Amendment); *see also,*

*Abdullah v. Sheridan Square Press, Inc.,* No. 93 Civ. 2515, 1994 WL 419847 (S.D.N.Y. May 4, 1994) (dismissing a libel claim brought under English law because "establishment of a claim for libel under the British law of defamation would be antithetical to the First Amendment protection accorded to the defendants."). The reason for limiting comity in this area is sound. "The protection to free speech and the press embodied in [the First] amendment would be seriously jeopardized by the entry of foreign [ ] judgments granted pursuant to standards deemed appropriate in [another country] but considered antithetical to the protections afforded the press by the U.S. Constitution." *Bachchan,* 585 N.Y.S.2d at 665. Absent a body of law that establishes international standards with respect to speech on the Internet and an appropriate treaty or legislation addressing enforcement of such standards to speech originating within the United States, the principle of comity is outweighed by the Court's obligation to uphold the First Amendment.

It is well established that the First Amendment protects the right to speak anonymously. *Melvin v. Doe*, 575 Pa. 264, 836 A.2d 42 (2003); *Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*, 536 U.S. 150, 166-67 (2002); *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 199-200 (1999); *McIntyre v. Ohio Elections Comm'n* 514 U.S. 334 (1995). These cases have celebrated the important role played by anonymous or pseudonymous writings over the course of history, from the literary efforts of Shakespeare and Mark Twain to the authors of the Federalist Papers. As the United States Supreme Court said in *McIntyre:*

> [A]n author is generally free to decide whether or not to disclose his or her true identity. The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible. Whatever the

> motivation may be, . . . the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry. Accordingly, an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.* * *
>
> Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent.

514 U.S. at 341-42, 356.

These rights are fully applicable to speech on the Internet. The Supreme Court has treated the Internet as a forum of preeminent importance because it places in the hands of any individual who wants to express his views the opportunity to reach other members of the public who are hundreds or even thousands of miles away. Accordingly, First Amendment rights fully apply to communications over the Internet. *Reno v. ACLU*, 521 U.S. 844 (1997).

A court order, even if granted for a private party, is state action and hence subject to constitutional limitations. *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1 (1948). A court order to compel identification in a situation that threatens the exercise of fundamental rights "is subject to the closest scrutiny." *NAACP v. Alabama*, 357 U.S. 449, 461 (1958); *see Bates v City of Little Rock*, 361 U.S. 516, 524 (1960).

"[I]n order to compel discovery of an anonymous internet speaker's identity, the requesting party must show: (1) the speaker has been given adequate notice and a reasonable opportunity to respond to the discovery request, (2) the requesting party's cause of action could survive a motion for summary judgment on elements not dependent on the speaker's identity, and (3) a balance of the parties' competing

-5-

interests favors disclosure." *Mobilisa, Inc. v. Doe*, 217 Ariz. 103, 112, 170 P.3d 712, 721 (Ct. App. 2007).

Accordingly, given the above, obtaining Doe's identity is not permitted. In order to sustain a cause of action for "injurious falsehood," a plaintiff must show that the defendant made a statement or statements: (1) to a third party, i.e., "published"; (2) knowing that the statement or statements were false; (3) in an effort to persuade the third party from dealing with the plaintiff; and (4) that resulted in a pecuniary loss to the plaintiff. *See, e.g., W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 4, 739 P.2d 1318, 1321 (App.1986) (citing W. Prosser and W. Keeton, The Law of Torts § 128, at 963 (5th ed.1984), and Restatement § 623A).

First, the statements made by Doe were either true, substantially true, or constitute opinion and are not action. If an allegedly defamatory statement is substantially true, it provides an absolute defense to an action for defamation. *Fender v. Phoenix Newspapers*, 130 Ariz. 475, 480, 636 P.2d 1257, 1261 (Ariz.App. 1981). Comment f to § 581(A) Restatement (Second) of Torts, § 581(A) states in part, "It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance" (Restatement (Second) of Torts § 581(A).)

Additionally, "if the defendants' statements about the plaintiff's [businesses] are protected opinions, the cause of action for trade libel must fail." *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998). A speaker's use of "loose, figurative" language indicates that the statements in question constitute opinion. In *Standing Comm. on Discipline of the United States Dist. Court v.*

*Yagman*, 55 F.3d 1430 (9th Cir. 1995), the court held that an attorney could not be sanctioned for accusing a district judge of being "dishonest" because the other terms the attorney used to describe the judge -- "ignorant," "ill-tempered," "buffoon," "sub-standard human," and "right-wing fanatic" -- made it clear that the attorney intended only to signal his general contempt for the judge, rather than to accuse him of corruption. *Id.* at 1440; *see also Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284, 41 L. Ed. 2d 745, 94 S. Ct. 2770 (1974) (holding that the use of the word "traitor" could not be reasonably interpreted as a representation of fact because it was used "in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization"); *Cochran*, 58 F. Supp. 2d at 1124-25 (holding that a statement that suggested that defense attorney Johnnie Cochran lied and exhibited unethical conduct was not actionable as a matter of law because the statement appeared in an opinion column and the author used "loose, figurative, and hyperbolic" speech throughout the column); *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001) (holding that publicly-traded company that brought action for trade libel, libel per se, interference with contractual relations and prospective economic advantage against individuals who had made postings critical of company in Internet chat room failed to establish probability of success on claims because the postings constituted opinion).

Second, Doe did not make any effort to persuade third parties to refrain from dealing with the Plaintiff, and there is no conceivable motive that Doe could have had to take such action. Third, it is inconceivable how Doe's postings could be the direct and proximate cause of Plaintiff's alleged damages.

It should also be noted that the injunctive relief sought by Plaintiff is strictly prohibited in the United States. In addition to the First Amendment's heavy presumption against prior restraints, courts have long held that equity will not enjoin a libel. *See Nebraska Press Ass'n,* 427 U.S. at 559, 96 S.Ct. 2791; *American Malting Co. v. Keitel,* 209 F. 351, 354 (2d Cir.1913); *Kramer v. Thompson,* 947 F.2d 666, 677-78 (3d Cir.1991) (citing cases); *Community for Creative Non-Violence v. Pierce,* 814 F.2d 663, 672 (D.C.Cir.1987) ("The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.") (internal citation omitted).

Moreover, Plaintiff would be unable to show that there is an imminent threat of irreparable harm that would be cause if the injunction was not granted. An injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008). A plaintiff seeking an injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Id.*

Furthermore, because the District of Columbia Court does not have personal jurisdiction over Doe, a court in the United States should not risk violating Doe's Constitutional rights simply to allow Plaintiff to obtain a judgment that is incapable of being enforced and is useless. When seeking discovery, a plaintiff is required to make a "preliminary showing of jurisdiction" before she is entitled to discovery. See, e.g., Fielding, 415 F.3d at 429 (stating that a plaintiff's discovery request should be granted if the "plaintiff presents factual allegations that suggest with reasonable particularity the

possible existence of the requisite contacts"); Cable Electronics, Inc. v. North America, No. 3:08-CV-0433-M, 2009 WL 2382561, at *2 (N.D. Tex. 2009), (citing Fielding). However, it is well within the district court's discretion to deny discovery requests where the plaintiff "offers only speculation" of jurisdiction; "fishing expeditions" into jurisdictional facts are strongly disfavored. See, e.g., Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402 (4th Cir. 2003); Base Metal Trading, Ltd. v. OJSC 'Novokuznetsky Aluminum Factory,' 283 F.3d 208, 216 n. 3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction").

Personal jurisdiction allows a court to enter a binding judgment on a party. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72, (1985). Absent customary foundations for personal jurisdiction, such as domicile, physical presence, etc., due process requires that the defendants in an action have purposeful minimum contacts with the forum state so that the state's exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 316 (1945). Doe has never even been to Canada.

Additionally, United States courts reject the proposition that the owner of a website can be sued anyplace that the site can be seen:

> If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist. The person placing information on the Internet would be subject to personal jurisdiction in every State. . . . But if that broad interpretation of minimum contacts were adopted, State

jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.

*ALS Scan v. Digital Serv. Consultants*, 293 F.3d 707, 712-13 (4th Cir. 2002). Accordingly, the subpoena should be quashed.

### III.	Alternative Protective Order

If the Court denies Defendant's request that the Court quash the subpoena, Defendant asks that the Court issue a Protective Order pursuant to Rule 21(c)(1)(A) to protect Defendant from undue hardship, annoyance, embarrassment, and oppression.  In the event that any discovery would be allowed, Defendant would request the Court impose sufficient protections to avoid such undue harsdship, annoyance, embarrassment and oppression. This would be accomplished by prohibiting any party from publicly disclosing any information relating to Doe that Plaintiff obtains via the subpoena, including requiring any pleadings filed in this action that contain Defendant's confidential information to be redacted and filed under seal to prevent public disclosure.

### VI.	Conclusion.

WHEREFORE, for the above stated reasons, Defendant Doe respectfully requests that the Court enter an Order:  (1) quashing any and all subpoenas issued to any third party seeking Defendant's identity; (2) sanctioning Plaintiff by awarding Defendant all costs and attorneys' fees incurred in filing this Motion; and (3) sanctioning Plaintiff by precluding the use of any information obtained from any subpoena referenced herein; and for such other and further relief as the Court finds just and necessary.  In the alternative, if the Court does not quash the subpoena, Defendant respectfully requests that the Court enter a protective order prohibiting the public disclosure of any of Defendant's confidential information obtained through the subpoena, including requiring that any pleadings filed in this action that contain such confidential information be redacted or filed under seal.

<u>Certificate of Compliance with Rule 26(c)(1), Fed. R. Civ. P.</u>, counsel for Defendant has attempted to confer in good faith with Plaintiff's counsel concerning the relief Defendant seek herein. Plaintiff's counsel indicated verbally that it would not consent or otherwise stipulate to the relief and it would indeed oppose Defendants' Motion.

RESPECTFULLY submitted this 7th day of September, 2012.

**KELLY / WARNER, PLLC**

By: <u>/s/ Daniel R. Warner (AZ Bar # 26503)</u>
Daniel R. Warner, Esq.
404 S. Mill Ave, Suite C-201
Tempe, Arizona 85281
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7th, 2012, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and distribution to the following registered participants of the CM/ECF System, who will also be served copies of the attached document by U.S. first class mail and electronic mail:

 David Hindman
Mesch, Clark & Rothschild, P.C.
259 N. Meyer Ave.
Tucson, AZ 85701

I further hereby certify that on September 7th, 2012, I will serve the attached document by electronic mail and First Class United States Mail on the following, who are not registered participants of the CM/ECF System:

Pinal County
c/o Clerk of the Board
31 N. Pinal Street, Building A
Florence, AZ 85132

Qwest Communications
c/o CT Corporation System
2390 E. Camelback Road
Phoenix, AZ 85016

                                 <u>/s/ Rachel N. Eisner</u>
                                 Rachel N. Eisner